COOPER *v.* MARTIN.*

(Division B. Nov. 2, 1925.)

[105 So. 740. No. 25141.]

ANIMALS. *Person impounding cattle infested with fever tick may cause tick eradication authorities to take charge of them as running at large, although such cattle are in his pasture.*

Under section 2, chapter 221, Laws of 1918 (Hemingway's Supplement 1921, section 5506h), where the owner of cattle infested with the fever tick lets them run at large, and they are impounded by another person to prevent depredations on crops, such person may cause the tick eradication authorities to take charge of them as provided in the statute, although at the time of such taking charge the cattle are in the pasture of such third person. Such person is not required to turn the cattle out of his pasture to depredate upon the crops five days, where the pasture is located in a stock law district, and where there is no contract between the owner of the cattle and the owner of the pasture.

*Headnote 1. Animals, 3 C. J., Section 636 (Anno).

APPEAL from circuit court of Lauderdale county. HON. C. C. MILLER, Judge.

Replevin by John T. Cooper against John M. Martin. Judgment for defendant, and plaintiff appeals. Affirmed.

*Williamson & Gipson,* for appellant.

Section 5495, Hemingway's Code, provides: "That before any county shall take up the work of tick eradication, that the board of supervisors shall order an election by giving thirty day's notice, to determine whether or not the county should come under said act, and if a majority of the qualified electors of the county voting in said election, vote in favor of said act, it shall become operative in the county." The act spoken of is chapter 218, Laws of 1914, and it does not affirmatively appear in this record, from the evidence, that any such election was ever held in Lauderdale county.

There were no records whatever introduced, and there were no records offered in evidence to prove or attempt to prove that the people of Lauderdale county had e-lected or subjected themselves to the Laws of the state governing tick eradication.

We cannot look to the rules and regulations of the state live stock sanitary board because none were offered or introduced in evidence, and such rules and regulations, if any, must be proven in the same manner as municipal ordinances and the acts of the board of supervisors. See *Covington Co.* v. *Pickering,* 123 Miss. 20, 85 So. 114.

Therefore, if any part of the laws or rules and regulations governing tick eradication is applicable to this case, for either party to this litigation, it is section 5506, Hemingway's Mississippi Supplement of 1921, chapter 221, Laws of 1918. And we must bear in mind that this law is highly penal, and must be strictly construed. *Abbott* v. *State,* 106 Miss. 340, 63 So. 667.

In passing upon the question whether or not the trial court committed error in granting defendant's request for a directed verdict, every material fact which appel-

lant's evidence tended to show, either directly, or by reasonable inference, should be taken as true. *McKinnon v. Braddock,* 104 So. 154.

In *Bird* v. *Welch, Sheriff,* 91 So. 568, this court held that a seizure, without writ, of undipped, tick-infested oxen was unauthorized where they had been running at large upon the common range, but were not running at large upon the commons or unfenced lands when seized by the officers.

We maintain that the method of enforcement in the case at bar was not reasonable, and was not within the bounds of the organic law; that the cows involved in this litigation were taken from the plaintiff and withheld from him without due process of law; that the lower court erred in granting a peremptory instruction for the appellee for the reason that the appellant, plaintiff below, should have been granted a peremptory instruction to find for him, which instruction was requested by appellant and was refused by the lower court, and, therefore, we submit that the judgment of the lower court should be reversed, and that judgment should be entered in this court in favor of the appellant.

*Amis & Dunn,* for appellee.

This case is controlled by chapter 221, Laws of 1918. In *Bird* v. *Welch,* 91 So. 568, the court construed the act in question as not authorizing deputy sheriffs to seize oxen, although infested with cattle fever ticks, which were then yoked together as a team in charge of a driver, and engaged in hauling logs on a public highway. Clearly the facts in that case did not authorize the seizure of the oxen by virtue of any provision of the statute. The statute is crude, but it is quite clear that the legislature intended thereby to provide that cattle found infested with cattle fever ticks, running at large upon the open range, commons or unfenced lands should be dealt with in the manner therein provided as a means of preventing

the spread of the ticks.    The procedure fixed by the statute is reasonable, and in our opinion in no wise violates any of the constitutional guaranties of the rights of property, etc.

It is perfectly manifest from all of the evidence in the case, that the cattle in question were infested, that they were running at large; (whether the act of the owner in permitting them to so at large was willful or intentional or not) that notice was given as required by the act; that the cattle were not removed by the owner within the time fixed, and that the sheriff took charge of the cattle and was dealing with them as required by law at the time the plaintiff brought his suit to recover them, without having first paid or tendered payment of the costs and expenses incurred in handling the cattle. When the whole record is examined it will be seen that there was no substantial conflict in the testimony as to the existence of facts which authorized the sheriff, under the law, to take charge of the cattle.   We, therefore, submit that the court did not err in peremptorily directing a verdict for the defendant.

The appellant insists here that it was not shown by the proof that the county in which the cattle were taken up had come under the provisions of chapter 220, Laws of 1914.   No such question was raised in the court below, and we are unable to see its pertinency here, for the reason that the Laws of 1914 were wholly superceded by the State Wide Tick Eradication Act, chapter 167, Laws of 1916.

Argued orally by *Nate S. Williamson,* for appellant.

ETHRIDGE, J., delivered the opinion of the court.

The appellant brought an action of replevin against the defendant sheriff to recover certain cattle belonging to the appellant which had been seized under section 2,

chapter 221, Laws of 1918, making it unlawful for cattle that are infested with the cattle fever tick to run at large, and providing for the eradication of the tick or ticks on such infested cattle and the recovery of the expense incident thereto. On the trial a conflict in the evidence arose, the plaintiff testifying that his cattle were kept in the pasture under a contractual arrangement with the owner of the pasture, and that at the time his cattle were seized that such cattle were not running at large, and that consequently there was no authority under the said act for the seizure of his cattle by the sheriff. The witness for the sheriff testified that the cattle were running at large and were infested with the fever tick, and that, for the purpose of keeping the cattle from depredating upon the property of a citizen, one of the witnesses, he placed the cattle in his pasture, but that the plaintiff appellant had no contract for the keeping of cattle in said pasture; that when the cattle were impounded in the pasture the tick eradication authorities were notified of their condition, and that said cattle were inspected and ordered to be dipped in the dipping vats at stated intervals; that the cattle were so dipped, and, after being dipped in accordance with the directions of the proper authorities, they were kept in the pasture for the purpose of keeping them from depredating on the crops; that the sheriff seized said cattle for the expense incident thereto under the terms of section 2, chapter 221, Laws of 1918. This section reads as follows:

"Should any cattle, horses or mules, which are carrying the cattle fever tick (*margaropus annulatus*) upon their bodies be found running at large upon the open range, commons or unfenced lands, it shall be the duty of any inspector commissioned by the live stock sanitary board or any citizen of the county to notify the owner or person having control of such animals; and such notice shall consist of either personal notice to such owner or person, or by one publication in a newspaper pub-

lished in the county having general circulation therein or by posting notice in three public places in the county, one of which shall be at the county courthouse, and if such animals are not removed within five days after such notification, publication or posting said notice, from the open range, commons or unfenced lands to notify the county sheriff forthwith that such tick infested animals are running at large, upon the open range, commons or unfenced place, and it shall be the duty of the inspector to dip or cause such animals to be dipped and thereafter be placed in an enclosure and dipped in accordance with the regulations of the live stock sanitary board, and during such period as such animals are so confined, they shall be in the custody of the county sheriff, who may collect reasonable fees for the feed, care and handling of such animals, and any expenses so incurred in handling, dipping, confining or feeding or pasturing of such animals shall be a lien against them to be paid by the owner or owners of such animals before the same are released by the sheriff and if such animals which have been so taken up and placed in the custody of the sheriff are not identified and claimed by the owner within a period of thirty days, such animals may be sold by the sheriff as provided by statutory law for estray animals.''

The verdict below was for the sheriff, and we think the verdict is supported by the evidence. Appellant contends that there was no authority to seize the cattle because they were not running at large at the time of the seizure and that the statute requires five days' notice before proceedings are authorized by public authorities.

We think the facts disclosed by this record that the cattle were running at large within the meaning of the statute. It is true one of the citizens of the community had placed them in his pasture for the purpose of protecting his crops, the pasture being within a stock law district, but, as the defendant had no contractual rights, so far as he was concerned the cattle were running at

large. The owner of the pasture would not be compelled to turn the cattle out on the range for five days before proceeding. The statute must be given a reasonable construction with a view to make it serve the purpose for which it was enacted, and, so construing the statute, the judgment of the court below must be affirmed.

*Affirmed.*